McKiNNEY, J.,
delivered the opinion of the court.
This ease presents a question which turns alone upon the construction of the act of 1825, ch. 10.
The state of faets, upon which the question arises, is this: The complainant’s intestate, Sarah Maddox, was the wife of the defendant, Notley Maddox. The marriage took place in the year 1835, and in 1837, said Sarah was compelled, by reason of the violence and: cruel treatment of her husband, to abandon his residence, and she continued to live separate and apart from him until her death, which happened in September, 1851, leaving her husband and one child, Thomas E. Maddox, the only issue of the marriage, surviving her. The wife supported and maintained herself and child, from the separation till her death, by her own exertions and means, without aid from the husband, *147 who wholly neglected to make any provision for either of them.
In 1848, John Moore, the father of said Sarah Maddox, died intestate, in Rutherford county, leaving a considerable estate, real and personal, to be distributed among his children. Shortly afterwards, said Sarah Maddox filed her bill against her husband and the other distributees and representatives of her father’s estate, to have her share thereof settled upon her to her separate use, to the exclusion of the husband’s marital rights. The bill sets forth all the facts in relation to the separation and the causes of it; but no decree for a divorce, or separation, is sought in terms. The decree in the cause recites the fact of separation and the causes, approvingly, but no divorce or separation is decreed. But it absolutely excludes the marital rights of the husband to the entire share of the wife in her deceased father’s estate, and settled the same upon the wife, “to the sole and separate use of the said Sarah, her heirs and assigns forever.”
The complainant, Cooper, administered on the estate of said Sarah Maddox, and received into his hands about the sum of $1,900 00 from the assets of her estate. To this fund opposing claims are set up: on the one hand, it is claimed by the husband in virtue of his marital rights; and on the other, by said Thomas F. Maddox, who denies the marital right of the husband, and insists that he is alone entitled to the bind as sole distributee of his deceased mother’s estate. And this bill is brought by the administrator to obtain the direction of the court as to which of the parties is entitled to the fund, both being properly be *148 ■fore the court, and this is the question for our determination.
On common law principles it is clear, that, upon the state of facts here presented, the administrator would be considered as holding the fund as trustee for the husband. There is nothing in the decree settling the property on the wife to her separate use, which can affect the rights of the husband so far as respects the question now under consideration. The vinculum of the marriage is not in any respect affected by the decree, but remains as before. In the most liberal view, the decree can be regarded as .nothing more than a judicial recognition of the right of the wife to lire separate from her husband. But even if a separation had been positively decreed, it would not, of its own proper force, have affected the husband’s common law right, through an administration on her estate, to reduce into possession for his own benefit, such of her oTioses in action as had not been reduced into possession during the coverture.
The question then is, does the act of 1825, work any change in the relation of the parties as respects the wife’s property, acquired in either of the modes therein stated?
This statute (varying a little the collocation) provides, that where the “husband has either left and abandoned (his wife) or discharged, or drove her from the place of his home and residence; or where she, the said wife, may have left and separated herself from the home and residence of her husband, and lives separate from him in consequence of receiving from him, her said husband, personal abuse, or violent, and ill *149 treatmentin either case, “ any property which may have been acquired by the labor, care and industry of the wife; or that she may receive by descent, gift or otherwise,” subsequently to such separation, shall not be subject to execution for the husband’s debts “neither shall the, husband interfere with, or dispose of the sarrnP
It is declared in a proviso, “that this act is not intended to protect, or to secure to the wife, the enjoyment of any property which she may have acquired previously to the separation having happened as aforesaid;” but the same shall remain liable to the payment of the husband’s debts. And it is declared furthermore, that “in case she shall again live with her said husband, after such separation, then the property acquired by her as aforesaid,” (that is acquired after the separation) “ shall be subject to his debts, and shall not be protected under the provisions of this act.”
The precise effect intended to be given to this act, is a question of some difficulty. The act is inexplicit and leaves much room for construction. If, however, effect be given to it at all, it must be held to work an important change, as well in respect to the status of the wife, as her rights of property. It places the wife in a new condition. It is a legal authority to her, without a judicial determination declaring a dissolution of the marriage tie, or even a separation from bed and board for an indefinite period; to separate and live apart from her husband; and to acquire and hold property independently of, and adversely to him. This is certainly an anomalous condition, but yet such a one as it was within the legislative competence to create,
*150 It will be observed that the act does not assume to displace the husband’s marital right wherever it may actually have attached, this it carefully guards against. Its operation is confined merely to the exclusion of the right where it has not yet vested. It proceeds upon the ground, as we suppose, that the voluntary renunciation of all the marital obligations and duties on the part of the husband, ought to be followed by a forfeiture, to some extent at least, of the corresponding marital rights. And however counter this may be to the harsh, not to say arbitrary and unjust, principles of the common law governing the rights of this domestic relation, who will say that it has not a just foundation in a sound and enlightened policy, as well as in the dictates of natural justice.
The act was intended to effect something more, on the wife’s behalf, than an enlargement of her previously existing right in equity to have her ¿hoses in action secured to her separate use. It contemplates a more valuable and enduring benefit than the mere suspension of the marital right during the life of the wife; the design of the law was, in our opinion, to exclude the right absolutely and forever; unless in the single contingency provided for, that is, in case she should voluntarily resume her former relation by returning to live with him; then of course the right would attach upon her acquisitions during the separation, in like manner as it attached upon her personal property in possession ppon the marriage. Such would have been the legal consequence of a re-union, upon established principles, without the aid of this provision; still, however, this provision is important to show the intention, that, in no •other event should the right attach.
*151 If tbis view of fcbe statute be correct, the wife must be regarded, to this extent^ as plaeed in the condition of a feme solej and endowed with the legal capacity to acquire and hold property, with all the dominion and incidents of ownership, as against the husband, his creditors, and all other persons in the particular circumstances provided for. And as a consequence of this construction of the statute, its operation will be to exclude the husband’s right of succession, upon her death, as effectually as would a decree dissolving the bond of matrimony. The acquisitions of the wife, after the separation, in either of the modes recognized by the statute, can no more be claimed by the husband, after the death of the wife, than in her lifetime; because, in the case provided for in the statute, the marital right is as completely destroyed as it would be by a decree of absolute divorce. If we are right as to the reason of the law — the forfeiture of the husband’s rights, by reason of his wilful refiisal to discharge the duties imposed by the relation — it would be absurd to admit any claim on his part to the property of the wife after her death.
It is obvious that other consequences must follow from this construction of the statute, which need not here be noticed. If they shall be found to be against public policy, the corrective power is in the hands of .the legislature.
The result of our opinion is, that Thomas E. Maddox, as distributee and next of kin to the deceased wife, is entitled to the fund in the hands of the administrator, and it will be bo decreed.
Decree of the chancellor reversed.